UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANG ANH CHUONG,<br>Petitioner,<br>v.<br>JOSHUA JOHNSON, et al.,<br>Respondents. | Case No. 5:26-cv-06190 ADS<br><br>ORDER GRANTING PETITION |

## I. INTRODUCTION

Petitioner Sang Anh Chuong, an immigration detainee, filed a Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241, seeking immediate release from immigration detention, among other relief. (Dkt. No. 1.) Respondents filed an Answer to the Petition. (Dkt. No. 9.) Petitioner filed a Traverse in support of the Petition. (Dkt. No. 10.) For the reasons discussed below, the Petition is granted.

## II. FACTUAL BACKGROUND

Petitioner was born in Vietnam in 1970. (Dkt. No. 1-1, Declaration of Sang Anh Chuong, ("Chuong Decl.") ¶ 2.) His biological mother is a Vietnam citizen, while his father is a United State citizen. (Id. ¶ 4.) Petitioner's father served as a solider in the United States Army and was deployed to Vietnam in 1969. (Dkt. No. 1-1, Ex. B, ¶ 2). While stationed at a military camp in Vietnam, Petitioner's father met a Vietnamese woman who became Petitioner's mother. (Id. ¶ 4.) When Petitioner's father departed from Vietnam in 1970, he continued to maintain contact with Petitioner's mother through postal mail. (Id. ¶ 6.) Around June 1970, Petitioner's father was informed by Petitioner's mother that Petitioner was born. (Id. ¶¶ 6-7.) However, Petitioner's father was unable to re-establish contact with Petitioner's mother or ever determine why Petitioner's mother ceased communication. (Id. ¶ 8.)

Petitioner was given up for adoption as an infant. (Chuong Decl. ¶ 5.) Petitioner and his adoptive family migrated to the United States through the Amerasians Homecoming Act Program, temporarily staying at a refugee camp in the Philippines before ultimately flying to the United States at approximately 20 years of age. (Id. ¶ 6.) In 1995, Petitioner was convicted for kidnapping, robbery, burglary, and possession of stolen property. (Dkt. No. 1-1, Ex. A.) Petitioner ultimately spent 24 years and 4 months in prison until his release in December 2017. (Id. ¶ 15.)

On December 28, 2017, Petitioner was released from a corrections center and transferred to immigration custody. (Dkt. No. 9-1 at 3.) On February 9, 2018, an immigration judge ("IJ") ordered Petitioner's removal. (Dkt. No. 9-2.) Because Petitioner waived his right to appeal the order of removal, the order of removal became final that same day. (Id.) On September 5, 2018, Petitioner was released from

immigration custody on an Order of Supervision ("OSUP"). (Chuong Decl. ¶ 26; Dkt. No. 9-3 at 5.)

Since Petitioner's release on OSUP in 2018, Petitioner worked as an HVAC/electrical technician in his adoptive brother's business. (Dkt. No. 1-1, Declaration of Mitch Chuong, ("Mitch Decl.") ¶ 10.) Petitioner also took care of his elderly parents and watched over his adoptive nieces and nephews. (Id. ¶ 13-18.) Petitioner alleges he attended every immigration check-in, committed no further crimes, and complied with every condition of his release. (Chuong Decl. ¶ 28.)

In 2024, Petitioner's father was contacted through AncestryDNA regarding a potential biological relationship with Petitioner. (Dkt. No. 1-1, Ex. B, ¶ 12). Further paternity testing conclusively established the biological relationship between Petitioner and Petitioner's father. (Id. ¶ 13.) Upon this discovery, Petitioner and Petitioner's father maintained close contact and spoke with each other almost every day. (Mitch Decl. ¶ 19.) Petitioner also filed an application for citizenship based on his father's status as a United States citizen, which remains pending. (Chuong Decl. ¶ 25.)

On September 22, 2026, Petitioner went to the Los Angeles Federal Building to attend a regular OSUP check-in. (Chuong Decl. ¶ 29.) At this check-in, Petitioner was detained by immigration officials. (Id. ¶ 30.) Petitioner's OSUP was revoked and he remains in immigration detention. (Dkt. No. 9-3 at 5-6.)

## III. SUMMARY OF BRIEFING

Petitioner seeks habeas relief from immigration detention. Specifically, Petitioner asserts the following grounds for relief: (1) a procedural due process violation because of re-detention without compliance with governing regulations; (2) a substantive due process violation under Zadvydas; (3) a violation of the Fifth

Amendment due to third country removal; (4) a violation of the Administrative Procedure Act; and (5) ultra vires re-detention in excess of statutory authority. (Dkt. No. 1 at 16-30.) Petitioner seeks immediate release from immigration custody, an injunction prohibiting his re-detention until Respondents obtain a travel document for his removal and comply with applicable regulations, and an injunction preventing third country removal without due process. (Dkt. No. 1 at 31.)

Respondents filed an Answer, contending that Petitioner will be removed in the reasonably foreseeable future. (Dkt. No. 9 at 4.) Respondents suggest that the Vietnamese government typically responds to travel document requests in 2-3 months. (Id.) Respondents further argue that Vietnamese immigrants can now be removed to Vietnam and provide examples of such cases. (Id. at 5-8.) Respondents further argue that OSUP procedures were complied with and that, in any event, the remedy for such a violation is not release but rather to order compliance with the regulations. (Id. at 8-9.)

Petitioner filed a Traverse, arguing that Respondents have failed to articulate case-specific reasons for revoking his OSUP. (Dkt. No. 10 at 2.) Petitioner further contends that evidence of some removals of Vietnamese immigrants is not sufficient to meet Respondents' burden under Zadvydas. (Id. at 5.) Petitioner also disputes that Respondents in fact complied with the notice and interview regulations pertaining to OSUP revocation. (Id.)

## IV. DISCUSSION

### *A.* Substantive Due Process Under *Zadvydas*

#### i. Legal Standard

The Supreme Court considered the constitutional limits of the prolonged detention of noncitizens in the landmark case Zadvydas v. Davis, 533 U.S. 678 (2001).

At issue in Zadvydas was the immigration detention of two noncitizens, one of whom was Kestutis Zadvydas. Id. at 684. Kestutis Zadvydas was a noncitizen with Lithuanian parents who was born in a displaced persons camp in Germany in 1948. Id. Kestutis Zadvydas immigrated to the United States when he was eight years old. Id. Upon his arrival in the United States, Kestutis Zadvydas developed a long criminal record, which included drug crimes, attempted robbery, attempted burglary, and theft. Id. Kestutis Zadvydas also had a history of flight in both criminal and immigration removal proceedings. Id. As a result of his criminal activity, Kestutis Zadvydas was ultimately ordered removed to Germany in 1994. Id. Kestutis Zadvydas was then detained to effectuate his removal. Id. However, the government struggled to remove Kestutis Zadvydas, despite the fact that his removal order was final. Id. Neither Germany or Lithuania would accept Kestutis Zadvydas because he was not a citizen of either country. Id. The government then attempted to remove Kestutis Zadvydas to the Dominican Republic, his wife's native country, but that effort failed as well. Id. In September of 1995, Kestutis Zadvydas filed a petition for writ of habeas corpus, challenging his continued detention as unconstitutional. Id.

In evaluating whether Kestutis Zadvydas's continued detention was unconstitutional, the Supreme Court emphasized at the outset that noncitizens, like citizens, have a fundamental constitutional right to liberty. Id. at 692. As a result of this fundamental right, the indefinite detention of noncitizens raises serious constitutional concerns. See id. ("The serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any such protection is obvious."). The Supreme Court also emphasized

that because immigration detention is civil and nonpunitive, it lacks the adequate procedural protections afforded to defendants in criminal proceedings. Id. at 690.

The Supreme Court ultimately provided a framework for district courts to employ when evaluating whether a noncitizen's detention has become unconstitutionally prolonged. Id. at 699-700. The framework holds that the general determination a habeas court must make is "whether the detention in question exceeds a period reasonably necessary to secure removal." Id. Reasonableness is measured primarily in terms of the purpose of the relevant statute. Id.

In the context of detention under 8 U.S.C. § 1231(a), which applies to noncitizens with final order of removal, detention is not reasonable if removal is not "reasonably foreseeable." Id. Because the Supreme Court recognized that determining whether removal is "reasonably foreseeable" can be difficult task, it also created a rebuttable presumption at the six-month mark of detention following a final order of removal. Id. at 700-701. The test when detention reaches this six-month mark is as follows: "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. at 701.

ii. Detention Period

The Court must first consider whether the six-month rebuttable presumption in Zadvydas is applicable.[1] As to whether Petitioner's detention period following a final order of removal has exceeded six months, this Court agrees with the numerous other

[1] Neither party disputes that Petitioner, as a noncitizen with a final order of removal, is a 8 U.S.C. § 1231(a) detainee whose detention must comply with the constitutional limitations outlined in Zadvydas.

district courts which have concluded that whether the Zadvydas presumption applies depends on the cumulative period of detention, in part because a contrary holding would invite the government to circumvent Zadvydas by simply releasing and re-detaining noncitizens nearing six months of detention. See Phan v. Warden of Otay Mesa Det. Facility, 813 F. Supp. 3d 1179, 1184 (S.D. Cal. 2025) ("[C]ourts in this district appear to uniformly aggregate detention periods, even over the span of decades as is the circumstance of this Petition."); see also Siguenza v. Moniz, No. 25-CV-11914-ADB, 2025 WL 2734704, at *3 (D. Mass. Sept. 25, 2025) ("Most courts to consider the issue have concluded that the Zadvydas period is cumulative, motivated, in part, by a concern that the federal government could otherwise detain noncitizens indefinitely by continuously releasing and re-detaining them.").

Here, Petitioner was ordered removed by an IJ on February 9, 2018. (Dkt. No. 9-2.) Because Petitioner waived his right to appeal the order of removal, the order of removal became final that same day. (Id.); see 8 C.F.R. § 1241.1(b). On September 5, 2018, Petitioner was released from immigration custody on OSUP. (Chuong Decl. ¶ 26; Dkt. No. 9-3 at 5.) Accordingly, Petitioner was previously detained for approximately seven months after a final order of removal. Further, on September 22, 2026, Petitioner was re-detained by immigration officials and he has been in immigration detention since. (Chuong Decl. ¶¶ 29-30.) This period of detention has lasted approximately 2 months to date. In total, Petitioner has been detained for approximately nine months following his final order of removal. Because this cumulative period of detention exceeds six months, the Zadvydas rebuttable presumption is applicable in this case.

iii. Whether Removal is Reasonably Foreseeable

Under the rebuttable presumption in Zadvydas, the Court must first consider if Petitioner has provided a "good reason" to believe that there is no significant likelihood of removal in the reasonably foreseeable future. A "good reason" exists when a noncitizen has already been released because their removal was not significantly likely in the foreseeable future. See Trieu v. Mullin, No. 5:26-CV-01653-MBK, 2026 WL 1045194, at *7 (C.D. Cal. Apr. 17, 2026) (explaining that a petitioner who was previously released after a final order of removal "already met his burden to show that his removal is not reasonably foreseeable"). A "good reason" also exists when the government has not taken affirmative steps to effectuate a noncitizen's removal, despite the long passage of time. See Andreasian v. Noem, No. 5:26-CV-00995-CV, 2026 WL 1195996, at *4 (C.D. Cal. Apr. 24, 2026) ("The passage of time combined with the government being no closer to repatriating a detainee than they were once they first took him into custody is sufficient to show a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future") (quoting Senor v. Barr, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019)).

Here, Petitioner was previously released on OSUP in 2018 because the government was unable to effectuate his removal. (Dkt. No. 1-1, Ex. E.). Further, despite the passage of 8 years since Petitioner's final order of removal, Respondents have failed to secure travel documents to effectuate Petitioner's removal. (Dkt. No. 9-1 at 2.) The government's inability to make significant progress in removing Petitioner, despite the passage of nearly 8 years and the nine-month detention of Petitioner, satisfies Petitioner's initial burden to provide a "good reason" to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.

Because Petitioner has provided a "good reason" to believe that there is no significant likelihood of removal in the reasonably foreseeable future, Respondents must respond with evidence sufficient to rebut that showing. A general allegation that a noncitizen may be removed is not sufficient for meeting Respondents' burden to prove that Petitioner has a significant likelihood of removal in the reasonably foreseeable future. See Vishal v. Chestnut, 811 F. Supp. 3d 1179, 1184-85 (E.D. Cal. 2025) ("Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur.").

Here, Respondents suggest that they have requested travel documents from the Vietnamese government and that the Vietnamese government typically responds to travel document requests in 2-3 months. (Dkt. No. 9 at 4.) Respondents also contend that removal is now possible for pre-1995 immigrants from Vietnam such as Petitioner because of a 2020 Memorandum of Understanding ("MOU") between the United States and Vietnam. (Dkt. No. 9 at 5.)

Prior to 2020, Vietnam only agreed to consider repatriation requests for Vietnamese immigrants who had arrived in the United States after July 12, 1995. Trieu v. Mullin, No. 5:26-CV-01653-MBK, 2026 WL 1045194, at *3 (C.D. Cal. Apr. 17, 2026). However, in 2020, the United States reached an MOU with Vietnam, in which Vietnam agreed to consider some pre-1995 Vietnamese immigrants for removal. Id.; (Dkt. No. 1-1, Ex. G.) The criteria used by Vietnam to evaluate whether a pre-1995 Vietnamese immigrant may be removed to Vietnam has been redacted from the public version of the MOU and is not otherwise publicly available. Nguyen v. Scott, 796 F. Supp. 3d 703, 722 (W.D. Wash. 2025); (Dkt. No. 1-1, Ex. G.) However, other public records suggest that

information pertinent to whether Vietnam may accept a pre-1995 Vietnamese immigrant includes whether the individual had a permanent address before leaving Vietnam, relatives in Vietnam, any other relatives abroad, and with whom and where the individual will live. Nguyen, 796 F. Supp. 3d at 722 (discussing the questions ICE officers are directed to ask pre-1995 Vietnamese immigrants in connection with the 2020 MOU).

Here, the government has failed to meet its burden to prove that there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. While Respondents have requested travel documents for Petitioner, Respondents have yet to receive a response from the Vietnamese government. Respondents have also failed to allege the date they requested these travel documents. Respondents provide no evidence that Petitioner meets Vietnam's qualifications for accepting pre-1995 Vietnamese immigrants. This uncertainty amplifies the risk that the government will be unable to remove Petitioner in the "reasonably foreseeable" future. See Nguyen, 796 F. Supp. 3d at 726 ("The Court knows now that a request for travel documents was sent to Vietnam on August 7, 2025, but does not know if Vietnam has acknowledged or otherwise responded to the request."). There is uncertainty regarding whether Vietnam will ultimately accept Petitioner given that Vietnam only accepts pre-1995 Vietnamese immigrants like Petitioner on a case-by-case basis. See Trinh v. Homan, 466 F. Supp. 3d 1077, 1090 (C.D. Cal. 2020) ("Vietnam now considers each request from ICE on a case-by-case basis.").

A number of district courts have concluded, in the context of pre-1995 Vietnamese immigrants, that the mere requesting of travel documents is insufficient to meet the government's burden that removal is "reasonably foreseeable." See Quan v.

Bowen, No. 5:25-CV-02546-HDV-PVC, 2025 WL 3691858, at *5 (C.D. Cal. Nov. 14, 2025) (concluding that the mere requesting of travel documents was insufficient to prove that a pre-1995 Vietnamese immigrant's removal was reasonably foreseeable); see Nguyen, 796 F. Supp. 3d at 725 (same); see also Hoac v. Becerra, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (same). In this circumstance, Respondents have failed to meet their burden under Zadvydas to show a significant likelihood of Petitioner's removal in the reasonably foreseeable future. The Petition is granted.[2]

**B. The Remedy**

In light of the above analysis, the only remaining question for the Court is the appropriate remedy for Respondents' violation. "[H]abeas corpus is, at its core, an equitable remedy." Schlup v. Delo, 513 U.S. 298, 319 (1995). Accordingly, courts have "broad discretion in conditioning a judgment granting habeas relief." Hilton v. Braunskill, 481 U.S. 770, 775 (1987). In Zadvydas, the Supreme Court made clear that if a noncitizen's removal is not reasonably foreseeable, the noncitizen must be released. See Zadvydas, 533 U.S. at 699-700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any

[2] The Court recognizes that noncitizens may be detained, regardless of whether there is a significant likelihood of removal in the reasonably foreseeable future, under special circumstances. See Zadvydas, 533 U.S. at 696 ("Neither do we consider terrorism or other special circumstances where special arguments might be made for forms of preventive detention and for heightened deference to the judgments of the political branches with respect to matters of national security."); see also 8 C.F.R. § 241.14 (listing the special circumstances where detention can be continued even when removal is not significantly likely in the reasonably foreseeable future). However, Respondents do not argue such a special circumstance applies in this case.

of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions."); see also Vishal, 811 F. Supp. 3d at 1185.

Accordingly, release is the appropriate remedy because Respondents have not met their burden to show that Petitioner's removal is reasonably foreseeable.[3] However, the Court does not consider it necessary to provide additional injunctive relief addressing a hypothetical possibility that Respondents may re-detain and remove Petitioner without complying with applicable statutes and regulations. See Meza-Hernandez v. Marin, No. 5:26-CV-00813-MCS-JDE, 2026 WL 1333740, at *1 (C.D. Cal. May 13, 2026) ("[T]he Court will not grant habeas relief that exceeds the scope of the claims in the petition or is based on speculation about what might happen after Petitioner's release.").

## V. CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. The Petition is granted;

2. Petitioner Sang Anh Chuong (A# 042-519-489) must be immediately released from immigration detention; and

3. Judgment shall be entered accordingly.

Dated: November 13, 2026

/s/ Autumn D. Spaeth
THE HONORABLE AUTUMN D. SPAETH
United States Magistrate Judge

[3] Because the Court finds Petitioner is entitled to relief under Zadvydas, the Court does not reach the other grounds asserted.